In any event, our first case today is 20-2503 DGM v. Attorney General of the United States. Is counsel ready? Good morning. How do you pronounce your last name? Searing. Ms. Searing, good morning. Good morning, Your Honor. Good morning and may it please the court. My name is Melissa Searing and I represent the petitioner DGM. I would like to request three minutes for rebuttal, please. Thank you, Your Honors. We are asking that the court vacate the BIA's order and remand with instructions to reopen DGM's cap proceedings for three reasons. First, the BIA ignored or misconstrued every single piece of changed country conditions evidence that DGM submitted. What are the changed country conditions here that the BIA ignored? Those conditions, Your Honor, speak to both of the deficiencies that the immigration judge identified in the proceedings below. The first set of evidence speaks to the likelihood that the Jamaican government would acquiesce in his torture. In fact, that was the reason why this court in the prior appeal denied the petition for review. I'm sorry. Your own petition uses language of continuation. And let me give you an example of in the motion to reopen removal proceedings here. What is noted is that Jamaica continues to have one of the highest homicide rates in the Americas. That's not language of some aggravation or some increase. Further, the corruption is still plaguing the Jamaican government. Again, a suggestion of the continuing nature of conditions that have previously existed. And, quote, that Jamaican government security forces are still committing arbitrary and unlawful killings. Continues still. Do those sound like words that describe semantically change? Respectfully, Your Honor, those are the words that DGM used in his pro se petition for review. However, the BIA's obligation is not only to review the arguments in a motion. However, its obligation is also to review the evidence that is submitted in support of that motion. So what does the evidence show that is perhaps contrary to the language of the motion or that suggests the kind of worsening that the language in the petition does not? So the evidence, Your Honor, shows that the Jamaican government is no longer taking the active steps that it was in 2015 and 2016 to combat that corruption and the unlawful killings. And I would cite, for example, in the record at pages 480 to 484, this was a report analyzing the Jamaican government's efforts in 2015 to fight this corruption, which resulted in the dismissal or resignation of 538 officers and the indictment of an additional 26. In 2016, which, again, was before the IJ in the proceedings below, the State Department's report indicates that 93 officers were indicted. And that is the qualitative changing conditions. I think the BIA referred to problems with witnesses, the kinds of problems that any prosecutorial jurisdiction were brought into in bringing cases. Isn't that kind of quantitative variance as opposed to qualitative variance? I would submit that there are both quantitative and qualitative differences, Your Honor. With respect to quantitative, in 2018, out of 122 reported officer-involved killings, less than 5 percent were being indicted. Legally, your contention is then that quantitative in and of itself could be enough if it is measurably a considerable amount. Because I don't understand or recall that change has really been defined anywhere in a quantitative sense. I submit respectfully, Your Honor, that could be evidence that there has been a change. And the State Department, in its 2018 Human Rights Report, acknowledged that this was a change by stating that the government did not take sufficient action to address the problem of unlawful killings. Sufficient action is different from not taking any action. You could say in this country the government is not taking sufficient action to address certain kinds of crime, not taking sufficient action to address a lot of problems. But that doesn't mean that the government is acquiescing in the existence of those problems or is a partner in the perpetuation of those problems. And the issue here, Your Honor, really is the change and what the government was doing in 2015 and 2016 and what the government is doing now. What is the change? And what you're telling me is, well, the numbers, the prosecutions went down, which suggests that there has to be some kind of a steady quantitative increase in conditions in order for them not to change. But that, to me, is simply saying that in year X, the situation was different than it was in year Y. It doesn't necessarily mean there's a change in circumstances between X and Y. I would respectfully disagree, Your Honor. The fact that the Jamaican government was actively prosecuting a majority of the reported killings in 2015-2016 and is now actively prosecuting less than 5 percent of the reported killings shows that there is a quantitative and qualitative difference in the steps that the Jamaican government is taking. And has our government noted that and characterized it in any way in some official report, whether it's a country conditions report or otherwise? Other than simply noting some kind of percentage or numerical change, has it been characterized as the kind of worsening that you're suggesting is a change sufficient to grant the relief that you are requesting? The State Department reports do not necessarily go back and compare the current conditions to every prior year. What amount of change is enough? I asked you before and you didn't respond to it, although I didn't make the query precisely as this. Has change been defined anywhere? Because it would seem to me that a mere one digit percentage change from year to year would not be enough quantitatively or qualitatively to make a difference, right? I don't think that assigning a numerical value to a percent change is the key here. I think the key here is that as this court recognized on the prior appeal that the Jamaican government, the numbers of prosecution and the steps that were... ...with a quantitative amount of change, with a qualitative nature of change, sufficient for the purposes of granting the relief that you request. And do we know? I don't think that that is something that is susceptible to a bright line rule necessarily, but when it's sufficient to show that there's... But is there a test of any kind? The test is whether it's now likely that the Jamaican government would acquiesce, would turn a willful blind eye to DGM's torture. What's your best piece of evidence in the record to support your argument? With respect to the acquiescence, aside from the evidence that we've discussed this morning, I would also point the court to the evidence that DGM submitted regarding others in similar circumstances to his own. For example, the 2019 Daily News article regarding Sean B., who had similarly testified against the leader of the Shower Posse gang and was later deported to Jamaica and met with imminent death threats. And that was in 2019. Also in 2019, a Guardian article reported that five deportees were killed upon their return to Jamaica by gangs. There is also evidence that killings by law enforcement specifically went up over 50% and that gangs are responsible for a majority of the violent crimes in Jamaica. And so this, coupled with the fact that the Jamaican government is now prosecuting less than 5% of these reported killings, shows that there has been a significant shift in the way that the Jamaican government is addressing the corruption and the unlawful killings by gangs. A strong enough shift to suggest they're acquiescing? Yes, Your Honor. Yes. I think the statute says either acquiesces in or is unwilling or unable to. It may be better, it seems to me, given what the record is, focusing on arguing that the government is unable to as opposed to the fact that they are acquiescing in. But even if that's the case, I'm not sure that the later evidence is sufficient to get you over the hump. It may be, but it's an easier climb, it seems to me, than going into the acquiescence argument. Well, I would certainly second that, Your Honor. If the unable prong is more convincing than the acquiescence prong, you're right. That is the alternative test here. Again, one thing to keep in mind is that the current ruling political party is the JLP, which has ties, significant ties, to the Shower Posse gang. In fact, the founder of the Shower Posse gang was a member of the JLP. But they had the same ties in 2006, didn't they? They did have the same ties in 2006. But again, in 2016, as the State Department recognized, the government, despite being led by the JLP, was actively taking measures to combat the corruption that was within its ranks. And those measures are no longer being taken. Could I turn just briefly to the issue concerning the cooperation of DGM? It is something that I'm more interested in hearing the Attorney General speak to. But how does that situation that DGM is now in, by virtue of his cooperation, impact, if at all, the motion that has been filed on his behalf? Well, Your Honor, that speaks to the likelihood of torture prong, which is the second deficiency that the IJ identified in the underlying proceedings. And it was because of his cooperation with the DEA and because of his testimony against his co-defendants that he has received multiple death threats and that he now is facing a likelihood of torture if he is returned to Jamaica. Does his election to have pursued that course impact at all on the use or availability of this particular issue to meet whatever burden he has under CAT? No, it does not, Your Honor. And I would like to turn also to the second prong of my argument, which is that the BIA, in analyzing whether DGM had showed a prima facie case, erred by applying the incorrect legal standard. On a motion to reopen, the correct legal standard is whether it is reasonably likely that the petitioner can show upon remand, upon reopening, that he is more likely than not to be tortured upon return to his country. Here, the BIA did not apply that standard. In fact, on the first page of the BIA's decision, the BIA required that DGM show that he will be tortured, which is a standard that a CAT applicant is never required to make. And then on the second page of its decision, it required DGM to show that he will likely be tortured, which, again, is the standard that he would be required to show if his case were reopened, but is too high of a standard at the motion to reopen stage. And so because of that, because of those errors, the BIA's failure to analyze a majority of the country conditions evidence, its failure to properly analyze the evidence that it did review, and then its application of the wrong legal standard, plus the fact that this case has been pending for more than five and a half years, all of that supports this court's remand with instructions to reopen. Thank you. Good morning, Ms. Marshall. Good morning. May it please the court, I'm Lindsay Marshall, on behalf of the Attorney General. Today, we are here on Petitioner's second PFR before this court. This time, he seeks review of the board's denial of his untimely motion to reopen. The court should deny this petition for review as well, because he has not shown that the board abused its discretion in finding that he didn't show changed country conditions, a showing necessary for him to overcome the time bar. What do you make of counsel's arguments that we just heard with respect to the decline of prosecutions and the news articles from 2019? Respectfully, I don't see the same level of change that she's referring to. And I think we can see this best in a comparison of the 2016 and 2018 human rights reports prepared by the Department of State. In the 2016 report, it says that corruption was a significant problem because of weak efforts to prosecute and that officials reportedly engaged in corrupt practices with impunity, that the Jamaican government didn't implement or enforce law effectively, that although they did charge some officers, their trials languished and could only point to one actual conviction. The 2018 report is remarkably similar. It says that officials sometimes engage in corrupt practices with impunity, which is actually softer language, and that the government took steps to investigate and prosecute, but full and swift accountability remained elusive, specifically called out slow prosecution, and again, noted only one conviction. So what do we look to, what do we look for when attempting to either measure or characterize change for purposes of the burden that the movement has here? Are you speaking to the level of change that we're looking for? That's kind of putting the rabbit in the hat, I think. Yeah. Are we talking about level? Are we talking about some measure? I mean, all we have is the word change, isn't it? With that definition. I think what we're looking for is something greater than a continuation, according to the matter. I'm sorry, greater than? A continuation. So we're looking for not a rising tide, but a sea change. We're looking for something that we can show that is not just a continuation of adverse. An example might be a formalized, and only an example, a formalized announcement of government policy that would impact negatively upon the movement. Exactly. Or a new and jarring event like a coup or a war, something big and new that didn't exist before, or that is at such a different level, we can't say this is just a continuation. What about their being unable to control? It seems to me that it's pretty clear that the government cannot control the gangs in the country. But what we're looking for here is a difference. And I don't think we have any difference, any significantly measurable difference, from the evidence that he presented in his 2017 removal proceedings. What about the article's reference specific to the shower posse and folks that may have cooperated in law enforcement in the states? That's where DGM finds himself, right? That, oh, are you referring to his cooperation with the DEA and his? And the retribution that might be waiting for him with the shower posse and the articles that were just referenced. Are you speaking specifically to the articles or to his DEA letter? No, no, it's a combination of both. I think turning to the DEA letter, the board held that this is simply not, first, a change in country conditions, and it's not a material or new piece of evidence. That DEA letter itself is new, but the information in it is a reiteration of what he had already testified to in his removal proceedings, that he had received threats. The only bit of information that my colleague points out is a little bit different, is a firm statement that his associates of his co-defendants are known to be in Jamaica. But as the board pointed out, this isn't material either, because in its previous decision, when it rendered its acquiescence finding, it did so assuming that the associates were in Jamaica. So when the board is analyzing this evidence, it's looking for new and material evidence. And when we have something that merely reiterates exactly what he said in his previous proceedings, we can't say the board is wrong in saying it wasn't new or material. You have referred specifically, in Judge Restrepo's question a short while ago, implicated a letter, the letter, I assume this is the Special Agent Hayes letter to DGM. Yes, Your Honor. What import, what significance, if any, does it have to these proceedings? And Ms. Sherring has suggested, has pointed us, of course, to the cat claim here. Would you agree? Well, I think that she is right to say that it speaks to the likelihood of torture prong. Here's a nagging question I've had, and I confess that it may only be my subjective reaction, and that its significance for our inquiry may or may not be of import. But isn't the government troubled at all by its own role in putting DGM at risk in securing his cooperation in a major investigation and prosecution? I'm troubled by that, too. Here's a guy who comes forward and risks his life to help out the government, and the government just, goodbye. Well, he was given deferred status for years. The problem was... And after that, the government said, goodbye. Well, after that, after he was convicted of another quite serious crime, served more time in prison, I think DHS was a little unwilling to renew the deferred... All right. So is that your point, though? I mean, you've referenced that. Is that subsequent and additional offense the game changer here? I think the game changer here, in terms of our analysis today, is that he's not offering anything new. There's no new and material changed country conditions. But you acknowledge, don't you, as Judge McKee's question suggests, that DGM faces a non-trivial risk of retribution upon his return? Yes. However, as both the agency and this court have already held, it didn't rise to the level necessary to meet the CAT standards. And here today, we're actually not asking that question. The question... We are. We're asking the question. The question that we're called to answer today isn't to analyze his risk of torture or even the likelihood of acquiescence. The question that we're asking today is, did he show changed country conditions? We understand the legal thing which is guiding it. What's being asked is a more fundamental equitable question, which I understand you're not wanting to answer it because the answer doesn't really help you get very far. I think it is legitimate to have a concern for him. But since this court and the board have already found that that concern wasn't enough to establish his eligibility for CAT deferral, I don't think we have to be so concerned as to the question of torture. Well, there's an irony here. And, again, this probably doesn't implicate the specific inquiry that we're pursuing. But doesn't it seem to you, shouldn't the government be concerned about actually disincentivizing would-be cooperators by virtue of sending them back to face what you agree with me is a non-trivial risk of retribution by virtue of their cooperation? Well, I think the government did incentivize people. It didn't remove him. It offered him deferred status for years. But then circumstances changed because of DGM's own doing. I think the problem with the case here is that to overcome the untimeliness of his motion, DGM had to show a change, something different than what the board and this court have already analyzed. And he simply didn't. The evidence that he provided of country conditions in Jamaica is markedly similar in terms of corruption, in terms of police killings, and in terms of generalized violence. And the DEA letter that he submitted didn't provide any new evidence. It spoke to the likelihood of torture prong, which was not the crux of his case. This court upheld the board's decision on a separate prong, acquiescence. So the DEA letter doesn't speak to the reasons that his case was denied. He simply didn't offer anything new and material. And without that, he cannot overcome the timeliness hurdle. Essentially, to prevail, the petitioner is asking this court to overlook his own view of the situation in his motion to reopen, where he described corruption and violence as continuing problems, problems that still plague Jamaica, corruption that has been longstanding. And he asked the court to overlook the weight of the evidence, which shows that corruption has, to quote the evidence, haunted the Jamaican police for decades, as well as the violence that has persisted for at least 60 years. We simply cannot say that the board abused its discretion here. If there are no further questions. Thank you very much. Thank you. What do you make of counsel's argument that it's his own doing? Well, respectfully, that that is not one of the considerations that the court undertakes in a cat claim. But, you know, they say get back into the technical argument of the cat claim and playing on her field and by her rules. And maybe that's what we had. Maybe that's what we have to play by. But you're being asked a more fundamental question, I think, than just what are the statute and what is black letter law mean applied to your client here? And the nice shown changed circumstances. That makes sense.  Well, there's an underlying equity that I think motivates Judge Smith's question. Certainly motivates my sympathy with this question and my sympathy, frankly, with your client's position. Doesn't mean he can win because I'm not sure the law gets him where he needs to be. But you answered what I thought was an equitable inquiry with a very legal, technical response. They say you're playing by the by the rules of oil. All the rules are on her side. And I think what I would like to get is some overlying. And maybe there's no way to do it here, given the case law that we have to follow and we do have to follow it. Some overlying principle, given what he has done in terms of risking his life to testify to assist the government. And then the government kind of saying later on, you're out of here, based not upon him being committing the crime of the month years later. But at least according to his testimony, a domestic dispute over the telephone, which equitably, it does seem like there's just something wrong with now him being sent back to a situation where it's pretty likely he's going to get beaten up and killed. I completely agree with your honor. And I think what we that what the court can do here is look at the letter, which my colleague has said has conceded is non shows a nontrivial risk of persecution. If he is returned to his country, the problem is to be. He looked at that in terms of changed personal circumstances. And they're right. Not changed country circumstances, which the statute requires. You show that that is correct. But this court has also held that on a motion to reopen, changed personal circumstances can be considered along with changed country conditions. And as I previously argued, we submit that along with what if you just have personal circumstances that have changed and not changed country circumstances? Then what is the what happens to the equation? Then we only have to change personal circumstances, not change country circumstances. And it may well be that you're getting a better argument and maybe getting derailed. Not looking at it is the fact the government is unable to do anything about it, not that they're acquiescing to say that that is correct. So if all that is shown has changed personal circumstances, the law in this circuit is that that is not enough on a motion to reopen. However, I would just bring this court back. I think one thing that's been a little lost in this argument is the standard that the BIA was required to at least explicitly consider material evidence in the record. And ultimately, for this court to remand to the BIA, it does not need to determine that DGM can actually show a CAC claim. All it needs to determine is that the BIA failed to fulfill that obligation when it said nothing about 14 out of the 15 pieces of country conditions evidence he submitted. And I would refer this court to the case of Liam, where it was sufficient for remand, where the BIA considered only seven of 35 exhibits. Here, the BIA considered much less. Well, but they did go on to say additionally, after they focused on the letter, BIA went on to say additionally, DGM has not presented sufficient evidence that there has been an increase in persecution in the country, focusing just on the increase in persecution to show acquiescence. It certainly does look, by the language the BIA used, that they considered the futility of the record, and not just the one thing that you're focusing on. Except that under this Court's precedent in Zeng and Liam, the BIA, on the motion to reopen, has a duty to explicitly consider material evidence. And here, there is nothing in the BIA's decision that tells this Court that it actually considered those additional pieces of evidence. The Court has nothing further. Thank you very much. And thank you, Pro Bono Council. We can't tell you how much we appreciate your efforts, your firm's efforts. It's greatly appreciated. Thank you very much. Thank you, Your Honors.